## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON VANBUREN,** | : | **CIVIL ACTION NO. 1:23-CV-971** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN SAGE,** | : | |
| | : | |
| **Respondent** | : | |

### MEMORANDUM

Petitioner Jason VanBuren ("VanBuren"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP") housed at the United States Penitentiary, Lewisburg, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his due process rights were violated while prison disciplinary proceedings. (Doc. 1). For the reasons that follow, the court will deny the habeas petition.

### I.    Background

#### A.    VanBuren's Conviction & Sentence

VanBuren is serving a 180-month term of imprisonment imposed by the United States District Court for the Northern District of New York for receipt of child pornography. (Doc. 11-3). His current projected release date is February 1, 2031, via good conduct time. (Id.)

#### B.    BOP Administrative Remedy Process & VanBuren's Submissions

The BOP has established a multi-tier administrative remedy system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. See

generally 28 C.F.R. §§ 542.10-.19.  If an issue raised by the inmate cannot be resolved through this administrative remedy system, the BOP will refer the inmate to appropriate statutorily mandated procedures.  Id. § 542.10(c).  The system first requires an inmate to present their complaint to staff before filing a request for administrative relief, which staff shall attempt to informally resolve.  Id. § 542.13(a). If informal resolution is unsuccessful, an inmate may file a formal written complaint to the warden, on the appropriate form, within 20 calendar days of the date of the event or occurrence and the warden shall provide a response within 20 calendar days.  Id. §§ 542.14, 542.18.  If the inmate is dissatisfied with the warden's response, he may file an appeal to the Regional Director within 20 calendar days.  Id. § 542.15(a).  The Regional Director has 30 calendar days to respond.  Id. § 542.18. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the BOP's General Counsel at the Central Office within 30 calendar days from the date of the Regional Director's response.  Id. § 542.15(a). No administrative remedy appeal is considered fully exhausted until reviewed by the General Counsel.  Id. § 542.15(a).

To appeal a decision of a Discipline Hearing Officer ("DHO"), an inmate must complete two steps.  28 C.F.R. §§ 542.10-542.19.  The inmate must first submit a DHO appeal to the Regional Director for the region where the inmate is currently located, within 20 days of the DHO's decision.  28 C.F.R. §§ 542.14(d)(2), 542.15.  If the appeal is denied at step one, the second step requires the inmate to appeal to

the Central Office within 30 days.  Id. § 542.15(a).  Again, the administrative remedy

appeal is not considered fully exhausted until reviewed by the General Counsel.  Id.

The Administrative Remedy Generalized Retrieval reveals that VanBuren

filed 15 administrative remedies while in BOP custody and only one—number

998212—concerns the claims in the instant habeas petition.  (Doc. 11-4).  On

November 12, 2019, the Regional Office received administrative remedy number

998212-R1 regarding VanBuren's DHO appeal.  (Id. at 3).  On January 10, 2020, the

remedy was denied and closed.  (Id.)  VanBuren did not file an appeal to the Central

Office.  (See Doc. 11-4).

### C.    BOP Disciplinary Process

The BOP's disciplinary process is fully outlined in 28 C.F.R. §§ 541-541.8.

These regulations dictate the manner in which disciplinary action may be taken

should a prisoner violate, or attempt to violate, institutional rules.  The first step

requires filing an incident report and conducting an investigation pursuant to 28

C.F.R. § 541.5.  Staff is required to conduct the investigation promptly absent

intervening circumstances beyond the control of the investigator.  28 C.F.R. §

541.5(b).

Following the investigation, the matter is then referred to the Unit

Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7.

If the UDC finds that a prisoner has committed a prohibited act, it may impose

minor sanctions.  Id.  If the alleged violation is serious and warrants consideration

for more than minor sanctions, or involves a prohibited act listed in the greatest or

high category offenses, the UDC refers the matter to DHO for a hearing.  <u>Id.</u>

Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of

good conduct time credits.  <u>Id.</u> § 541.3.  In the event that a matter is referred for a

hearing, the warden is required to give the inmate advance written notice of the

charges no less than 24 hours before the DHO hearing and offer the inmate a full-

time staff member to represent him at the DHO hearing.  <u>Id.</u> § 541.8 (c) and (d).

 At the DHO hearing, the inmate is "entitled to make a statement and present

documentary evidence" and has the right to present documents and submit names

of requested witnesses and have them called to testify.  <u>Id.</u> § 541.8(f).  The DHO shall

"call witnesses who have information directly relevant to the charge[s] and who are

reasonably available."  <u>Id.</u> § 541.8(f)(2).  The DHO need not call repetitive witnesses

or adverse witnesses.  <u>Id.</u> § 541.8(f)(3).  The inmate has the right to be present

throughout the DHO hearing except during "DHO deliberations or when [his]

presence would jeopardize institution security, at the DHO's discretion."  <u>Id.</u> §

541.8(e).  The DHO must "consider all evidence presented during the hearing."  <u>Id.</u>

§ 541.8(f).  "The DHO's decision will be based on at least some facts and, if there is

conflicting evidence, on the greater weight of the evidence."  <u>Id.</u>  The DHO has the

authority to dismiss any charge, find a prohibited act was committed, and impose

available sanctions.  <u>Id.</u> § 541.8.  The DHO must prepare a record of the proceedings

sufficient to document the advisement of inmate rights, DHO's findings, "DHO's

decision", specific "evidence relied on by the DHO" and must identify the reasons

for the sanctions imposed.  Id. § 541.8(f)(2).  A copy must be delivered to the inmate.

Id.

### D.   Incident Report Number 3306691

On September 21, 2019, VanBuren received Incident Report 3306691

charging him with prohibited act code 312—assaulting any person; prohibited act

code 224a—refusing to obey an order; and prohibited act code 307—insolence

toward staff.  (Doc. 11-6).  The reporting officer described the incident as follows:

> On September 21, 2019 I officer Hulme was assigned as the SHU 4
> officer.  At approximately 8:20 PM I escorted Inmate Vanburen, Jason
> 25137-052 from cell 139 on C range to the holding cell 108.  While
> escorting inmate Vanburen, he attempted to pull away from my
> control several times.  I gave him a direct order to stop pulling away
> from my control and to walk normal to holding cell 108.  Once we
> arrived at holding ceil 108 he attempted to drag me into the cell stating
> to me "Go Fuck Yourself".  He made a violent lunge where it took me
> off balance.  At this time I immediately grabbed him and placed him on
> the ground in order to maintain control.  When I placed him on the
> ground I used as little amount of force as I could in order to control
> him.  At this time a call for staff needs assistance in the Special
> Housing Unit was made.  Inmate Vanburen was then escorted to
> medical.

(Id. at 2).

VanBuren received the Incident Report at 8:31 a.m. on September 22, 2019.

(Id. at 2-3).  He was advised of his right to remain silent, and he indicated that he

understood his rights as read to him.  (Id. at 3).  When asked if he would like to

make a comment, he declined.  (Id. at 3).  During his UDC hearing, which took place

on September 25, 2019, VanBuren commented "Please read my written statement."

(Id. at 2).  The UDC referred the matter to a DHO due to the severity of the incident.

(Id.).  VanBuren received the Notice of Discipline Hearing form and Inmate Rights at Discipline Hearing form at 10:20 a.m. on September 25, 2019.  (Id. at 4-5).  He signed both forms, did not request representation by a staff member, and elected not to call witnesses on his behalf.  (Id.)

The disciplinary hearing convened on October 11, 2019.  (Doc. 11-5).  The DHO verbally advised VanBuren of his rights, noted that he received advanced written notice of the charges on September 22, 2019, recorded that he waived his right to witnesses and a staff representative, and documented that VanBuren indicated that he understood his rights.  (Id. at 2).  No procedural issues were cited by VanBuren.  (Id. at 3).  At the hearing, VanBuren stated that "[t]here was never any time I pulled away from the officer."  (Id. at 2).

In finding that VanBuren committed the prohibited acts as charged, the DHO relied upon the incident report, written statements of correctional officers, the investigation, photographs, video footage of the incident, and VanBuren's written statement.  (Id. at 4-5).  The DHO found that the video footage contradicted VanBuren's written statement and detracted from his credibility.  (Id. at 4).  The finding of guilt for the code 307 violation resulted in disallowance of 14 days of good conduct time, and loss of phone privileges for two months; the finding of guilt for the code 312 violation resulted in disallowance of 14 days of good conduct time, and loss of email privileges for two months; and the finding of guilt for the code 224a violation resulted in disallowance of 27 days of good conduct time, and loss of commissary and email privileges for three months.  (Id. at 5).  The sanctions of loss

6

of good conduct time and loss of privileges were levied "to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times." (Id.)

At the conclusion of the hearing, the DHO advised VanBuren of his appeal rights. (Id.)  The DHO delivered a copy of the report to VanBuren on October 23, 2019. (Id.)

## II.   **Discussion**

VanBuren filed the instant petition alleging that his due process rights were violated during the disciplinary proceedings. (Docs. 1, 8).  He seeks expungement of the incident report and reinstatement of his good conduct time. (Doc. 1, at 7; Doc. 8, at 7).  Respondent argues that the petition must be denied because: (1) VanBuren failed to exhaust his administrative remedies before filing the instant habeas petition; and (2) the DHO's decision satisfies the "some evidence" standard and VanBuren was afforded all requisite due process. (Doc. 11).  We address each argument in turn.

### A.     **Exhaustion of Administrative Review**

Although there is no explicit statutory exhaustion requirement for § 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims.  See Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) (citing Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986)); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to

"correct their own errors" thereby fostering "administrative autonomy." Moscato, 98 F.3d at 761-62 (citations omitted).  As stated, the BOP has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment.  See generally 28 C.F.R. §§ 542.10-.19.  That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel.  See id. §§ 542.13-.15.  Relevant here, DHO appeals must be submitted initially to the Regional Director and need not be filed at the institution.  Id. § 542.14(d)(2).  No administrative remedy appeal is considered fully exhausted until reviewed by the General Counsel.  Id. § 542.15(a).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review.  See Moscato, 98 F.3d at 761.  Only in rare circumstances is exhaustion of administrative remedies not required.  For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction.  See Vasquez v. Strada, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)).  Exhaustion is likewise not required when it would be futile.  Rose v. Lundy, 455 U.S. 509, 516 n.7 (1982).

VanBuren acknowledges that he did not exhaust administrative remedies with regard to his present claims.  (Doc. 1, at 4, 8; Doc. 8, at 4).  He asserts that he never received a response from the Regional Office, and, thus, could not pursue his appeal to the Central Office.  (Id.)  However, the BOP's administrative remedy

8

process has a deemed-denial provision, and explicitly provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.  Thus, if VanBuren did not receive a response from the Regional Director within 30 days of November 12, 2019, he was entitled to consider it denied and continue to pursue his remedies by appealing to the Central Office.  There is no evidence that VanBuren did so.  Even if VanBuren thought further pursuit would be futile, "[c]ourts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals.'" Ross v. Martinez, No. 4:09-cv-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009) (quoting Malvestuto v. Martinez, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009).  Because VanBuren did not appeal his adverse decision to the Central Office, and no exception applies, his claim has not been exhausted.  VanBuren's § 2241 petition must be dismissed.

Assuming *arguendo* that exhaustion could be excused, VanBuren's claim is without merit.  Erring on the side of caution, we will alternatively address the merits of the habeas petition.

**B.    Due Process Claim**

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall...be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Federal inmates possess a

liberty interest in good conduct time.  See <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555-57 (1974); <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991).  Therefore, VanBuren's claim, that his due process rights were violated in the context of the disciplinary hearing process and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition.  See <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: (1) written notice of the claimed violation at least 24 hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; (3) assistance in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  See <u>Wolff</u>, 418 U.S. at 564.

Further, the decision of the DHO will be upheld if there is "some evidence" to support the decision.  <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985); <u>see</u> <u>also</u> <u>Young</u>, 926 at 1402-03 (applying <u>Hill</u> standard to federal prisoner due process challenge to prison disciplinary proceedings).  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  <u>Id.</u> at 455.

Judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support.  Id. at 457.

It is clear from the record that VanBuren received adequate and timely written notice before both the UDC and DHO proceedings.  He was notified of his right to remain silent before both proceedings.  He was also afforded the opportunity to call witnesses, have a staff representative, and present documentary evidence.  His hearing was held before an impartial DHO, and he was provided with a written copy of the DHO's decision, which recited the evidence relied upon and the rationale behind the disciplinary sanctions and was notified of his right to appeal.  Specifically, in arriving at a finding of guilt, the DHO considered the incident report, staff memoranda, photographs, video footage of the incident, and VanBuren's written statement.  (Doc. 11-5).  After review of the video of the incident, the DHO concluded that VanBuren's statement proved false, as it was not supported by the actual video footage.  (Id. at 4).  VanBuren was afforded all due process protections required by Wolff and the DHO's conclusion, that he committed Prohibited Act codes 224a, 307, and 312, has some evidentiary support.[1]

--------

[1] VanBuren also claims that prison officials issued the incident report for retaliatory reasons— "to cover-up staff misconduct of assaulting me…because of [the] charge (criminal charge) that I'm convicted of."  (Doc. 1, at 3; Doc. 8, at 3).  Because this claim, as it relates to the loss of his good time credits, affects the duration of VanBuren's sentence, it is properly raised in his habeas petition.  See Queen v. Miner, 530 F.3d 253, 255 n.2 (3d Cir. 2008).  However, our determination that there is some evidence to support the DHO's decision negates the claim.  See McGee v. Scism, 463 F. App'x 61, 64 (3d Cir. 2012) (nonprecedential) (citing

Case 1:23-cv-00971-CCC-CA   Document 13   Filed 07/31/24   Page 12 of 13

The court next considers the sanctions imposed by the DHO. VanBuren was found guilty of one 200-level, high severity level prohibited act, and two 300-level, moderate severity prohibited acts. The sanctions imposed by the DHO were consistent with the severity levels of the prohibited acts and within the maximum available to the DHO. <u>See</u> 28 C.F.R. § 541.3 (Table). Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." <u>Levi v. Holt</u>, 192 F. App'x 158, 162 (3d Cir. 2006) (nonprecedential)[2] (citing <u>Rummel v. Estelle</u>, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. <u>Moles v. Holt</u>, 221 F. App'x 92, 95 (3d Cir. 2007) (nonprecedential) (citing <u>Sandin</u>, 515 U.S. at 484). The penalties imposed here, loss of good conduct time and loss of privileges, do not work an "atypical and significant hardship" on VanBuren

---

<u>Henderson v. Baird</u>, 29 F.3d 464, 469 (8th Cir. 1994) (holding that if a prison disciplinary committee's finding of a violation of prison rules is based on some evidence, that "finding essentially checkmates [a] retaliation claim")); <u>see</u> <u>also</u> <u>Lasko v. Holt</u>, 334 F. App'x 474, 477 (3d Cir. 2009) (nonprecedential) (holding because sufficient evidence supported the DHO's disciplinary determination, the retaliation claim must fail) (citing <u>Carter v. McGrady</u>, 292 F.3d 152, 159 (3d Cir. 2002)).

[2] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

12

and do not serve to extend his confinement beyond the expected parameters of his

sentence.[3]  Sandin, 515 U.S. at 484-85.  Consequently, he is not entitled to relief.

**III.   Conclusion**

Based on the foregoing, the court will deny the petition for writ of habeas

corpus.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:          July 31, 2024

---

[3] As stated *supra*, VanBuren's projected release date is February 1, 2031, via
good conduct time.  (Doc. 11-3, at 2-4).